**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **VIVIAN REDDING** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **5:07-CV-451 (CAR)** |
| | : | |
| | : | |
| **NORBORD GEORGIA, INC.,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

*ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

In this employment discrimination case, Plaintiff Vivian Redding complains that his employer, Norbord Georgia, Inc., unlawfully discriminated against him on the basis of his race and unlawfully retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII").  Currently before the Court is Defendant's Motion for Summary Judgment [Doc. 29].  Having read and considered the Motion, the record in this case, the applicable law, and the arguments of the parties, the Court finds that Plaintiff fails to raise genuine issues of material fact on any of his claims and therefore **GRANTS** Defendant's Motion for Summary Judgment [Doc. 29].

**BACKGROUND**

Plaintiff alleges Defendant discriminated against him on the basis of his race and unlawfully retaliated against him in violation of Title VII.  For his race discrimination claim, Plaintiff alleges that he was a member of a protected class, qualified to do the job, subjected to adverse employment actions, and treated less favorably than similarly situated individuals outside his protected class.

1

Specifically, Plaintiff contends that he was subjected to the following adverse employment actions: (1) Plaintiff was not allowed to supervise his shifts; (2) Plaintiff was verbally criticized for events he does not recall occurring; (3) Plaintiff was forced to resign and be demoted, and Defendant did not create a new position for Plaintiff in the alternative of being demoted; (4) Plaintiff was forced to clean the press; (5) Plaintiff was given a verbal warning for a blender overrun mistake; and (6) Plaintiff was terminated.  For his retaliation claim, Plaintiff alleges that he engaged in statutorily protected activity, suffered adverse employment action, and the two events were causally connected. Specifically, Plaintiff contends that he was terminated as a result of complaining about discrimination in the workplace to Corporate Human Resources ("HR") Manager Bob Kinnear in 2004 and to Regional Manager Jim Black in 2005.

_Defendant's Chain of Command Procedure_

Defendant Norbord Georgia, Inc. is in the business of producing wood-based panels.  In 2002, Defendant purchased a facility in Cordele, Georgia, where Plaintiff, a black male, was employed.  Plaintiff remained employed by Defendant after the transition and was eventually promoted from Team Leader to Process Control Technician ("PCT").  PCTs are responsible for quality control and fill-in for shift supervisors when they are absent.

Defendant has a Conflict Resolution Procedure, which instructs employees to follow the chain of command in resolving issues.  Although Plaintiff denies seeing this policy in writing, he was aware of how to address work-related issues.  The chain of command means that an employee should report any problems to his immediate supervisor and if the employee is not satisfied with the answer from his immediate supervisor, then he may speak to the next highest level manager and so on.  As PCT, Plaintiff's immediate supervisor was Matt Staten, a white male. The next highest

2

person was Production Manager Bob Avrett, a white male, followed by Plant Manager Avery Smith, a white male.

*Plaintiff's Employment as PCT - Shift Supervision, Verbal Criticism, and Demotion*

As PCT, Plaintiff contends that on several occasions in 2004, he was not allowed to supervise his shifts.  Plaintiff alleges that on these occasions when Plaintiff's supervisor was absent and Plaintiff was filling in as supervisor, another supervisor or PCT would be present at the facility to "watch over" his shift. (Pl. Dep. 60, 71).  Thereafter, Plaintiff called Plant Manager Smith to complain that he felt "discriminated against because [he] was not being given the opportunity to run [his] shift." (Pl. Dep. 61-62, 70).

Although Plaintiff does not recall ever having this conversation, a memorandum shows that Plaintiff's supervisor Staten and Production Manager Avrett spoke with Plaintiff on February 25, 2004 regarding his communications skills.  This conversation was not in relation to a specific event; rather, Staten and Avrett told Plaintiff that he needed to remain claim during his shifts, respect his team members, and improve his communication skills by "becoming more supportive and less directive" with other employees. (Pl. Dep. Ex. 6).

Soon thereafter, Plaintiff was forced to resign his position as PCT and was demoted after an investigation into allegations accusing him of harassment.  On April 8, 2004, Smith received an anonymous voicemail accusing Plaintiff of harassing Debra West, a shift employee.  After listening to the message, both Avrett and HR Manager Keith Blanton instigated an investigation into the allegations.  They concluded that Plaintiff "had used unnecessary language and speaking manner that caused the employee to be upset," and Plaintiff had on "two other instances used unnecessary language and speaking manner in dealing with employees while he was in a leadership role." (Pl.

3

Dep. Ex. 16; Avrett Aff. ¶ 5).

In a private meeting between Plaintiff and Avrett to discuss the incident, Avrett presented Plaintiff with two options - resign and take a lower level position or be fired.  Thus, on April 13, 2004, Plaintiff wrote a letter resigning from his position as PCT "because of personal reasons." (Pl. Dep. Ex. 4).   Plaintiff contends that this was essentially a demotion and that in lieu of being demoted, Defendant should have created a new position for him since Defendant had done this for another employee in the past.  Nevertheless, Plaintiff was demoted to Press Technician, and Kemuel Taylor, a black male, replaced Plaintiff as PCT.

After the demotion, Plaintiff contacted Corporate HR Manager Kinnear and complained about the demotion and discrimination in the workplace.  Plaintiff did not complain, however, about the demotion or discrimination to the next highest person above Avrett, Plant Manager Smith.

*Plaintiff's Employment as Press Technician - Cleaning the Press, Blender Overrun Mistake, and Termination*

On January 18, 2005, Production Manager Avrett asked Plaintiff to blow debris off the press. On every shift, employees blow off the press because dust and debris collects on the surface of it, creating a potential fire hazard.  As Plaintiff was retrieving the safety equipment to blow off the press, he saw Plant Manager Smith and complained that the task was unsafe.  Smith then told Plaintiff not to finish the task but emphasized that Avrett had done nothing wrong by asking Plaintiff to perform the task.  Later that same day, Plaintiff met with Smith and HR Manager Blanton to discuss the incident.  In this meeting, they emphasized the importance of performing tasks when asked.  As Plaintiff was leaving, Smith told him that the next time Plaintiff complained, he should call Regional Manager Jim Black, rather than Corporate HR Manager Kinnear.

4

About one month later, on February 17, 2005, Plaintiff received a verbal warning from PCT Taylor for failing to shut down certain equipment when a problem arose in one of the blenders. After this incident, Plaintiff believed that management was "trying to build a case" against him based on all of the previous events and "rumors around the mill." (Pl. Dep. 182-83).  Therefore, on March 3, 2005, Plaintiff asked Blanton for Black's phone number, based on Smith's previous instruction to call Black regarding future complaints.

After being informed by Blanton that Plaintiff had asked for Black's number, Avrett confronted Plaintiff about Plaintiff's concerns.  Avrett asked Plaintiff why he wanted to talk to Black rather than someone at the facility like himself or Smith.  Plaintiff responded that he did not believe it would do any good to talk to management who had signed off on the verbal warning he had received from Taylor.  Avrett then told Plaintiff to talk with Avrett and Smith about his concerns on the following day.  Disregarding these instructions, Plaintiff called Black later that same day and left a voicemail without giving a reason for his call.  Upon receiving Plaintiff's voicemail, Black called Smith wanting to know why Plaintiff had left him a voicemail.

On the following day, March 4, 2005, Plaintiff was discharged.  Avrett read Plaintiff his termination letter, which stated that Plaintiff was terminated for twice failing to follow procedures by not using the chain of command to resolve issues.  The first time was when Plaintiff complained to Kinnear, rather than Smith, about his demotion and discrimination, and the second time was when Plaintiff called Black after being told that Plaintiff would talk to Avrett and Smith the next day about his concerns.

On July 30, 2005, Plaintiff filed an EEOC charge alleging race discrimination and retaliation. Plaintiff then filed the present lawsuit in this Court alleging race discrimination and retaliation in

5

violation of Title VII.  Following discovery, Defendant filed the present motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).  Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.  See id. at 249-52.

In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence.  See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323 (internal quotation marks omitted).

If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of

material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions.  See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).  Ultimately, summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof."  Celotex, 477 U.S. at 323.

## DISCUSSION[1]

Plaintiff alleges he was discriminated against on the basis of his race and unlawfully retaliated against in violation of Title VII.  The Court finds Plaintiff has failed to create a genuine issue of material fact.  As a preliminary matter, several claims are time-barred.  Plaintiff failed to timely file an EEOC charge within 180 days of the following employment actions: not being allowed to supervise his shifts, being verbally criticized for events Plaintiff does not recall occurring, being demoted or in the alternative failing to create a new position for Plaintiff, and being asked to blow off the press.  Moreover, Plaintiff has failed to present sufficient evidence to establish a prima facie case of race discrimination.  Although Plaintiff is a member of a protected class and presumably qualified to do the job, he fails to show either that the particular employment action was an adverse employment action or that a similarly situated individual outside his protected class was treated more favorably for the same or similar conduct.  Aside from Plaintiff's demotion and termination, his alleged adverse employment actions are not sufficiently adverse because none

---

[1]Plaintiff originally brought this suit alleging claims for race discrimination and retaliation in violation of Title VII and defamation.  Plaintiff clarified in his Response to Defendant's Motion for Summary Judgment [Doc. 33] that he is not pursuing a cause of action for defamation.  Thus, Defendant's Motion for Summary Judgment on Plaintiff's claim for defamation is **GRANTED**.

resulted in a serious and material change in Plaintiff's terms, conditions, or privileges of employment.  Regarding Plaintiff's demotion and termination, he fails to show a similarly situated white employee treated more favorably for the same or similar conduct.

Plaintiff's prima facie case of retaliation fails for two reasons.  First, Plaintiff cannot show that his termination was causally linked to his complaint of discrimination to Corporate HR Manager Kinnear in 2004.  Second, Plaintiff cannot show that he engaged in statutorily protected activity when he complained to Regional Manager Black in 2005.  To prevail on his retaliation claim, Plaintiff must show that he engaged in statutorily protected activity, suffered adverse employment action, and that the two events were causally connected.  Therefore, both of Plaintiff's Title VII claims are without merit because he fails to meet the elements of a prima facie case for race discrimination and retaliation.

A.    Time-Barred Claims

Before addressing Plaintiff's claims on the merits, the Court must address a preliminary issue: whether Plaintiff has exhausted all of his administrative remedies.  Plaintiff failed to exhaust his administrative remedies with respect to all of his 2004 claims and his 2005 claim of being asked to clean off the press.  Before suing under Title VII, a plaintiff must first exhaust his administrative remedies, which requires filing a charge of discrimination with the EEOC within 180 days after an alleged unlawful employment practice occurred. Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001) (citations omitted).  If a plaintiff fails to file before this time elapses, his claim is untimely and cannot form the basis of a Title VII claim. Jordan v. City of Montgomery, 283 F. App'x 766, 767 (11th Cir. 2008).  This time limitation applies to discrete discriminatory acts, such

as "termination, failure to promote, denial of transfer, or refusal to hire." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14 (2002).

In this case, Plaintiff failed to timely file a charge of discrimination with the EEOC within 180 days from the following employment actions: (1) Plaintiff not being allowed to supervise his shifts in 2004, (2) Plaintiff being verbally criticized for events he does not recall occurring in 2004, (3) Plaintiff being forced to resign and be demoted, and Defendant not creating a new position for Plaintiff in lieu of his demotion in 2004, and (4) Plaintiff being asked to blow off the press in 2005. Plaintiff contends that Defendant's actions were not discrete discriminatory acts but instead constituted continuing violations and were evidence of a hostile work environment. Under a hostile work environment theory, the time limitation for filing a charge of discrimination is different because such a claim "cannot be said to occur on any particular day." Morgan, 536 U.S. at 115. The time limitations applicable to a hostile work environment claim do not apply in this case, however, because each of Plaintiff's claims occurred at a fixed time.

Plaintiff filed an EEOC charge on July 30, 2005. Thus, all of Plaintiff's 2004 claims and his January 18, 2005 claim of being forced to clean off the press are untimely because the EEOC charge was filed more than 180 days after each incident. Even if these events were not discrete discriminatory acts, Plaintiff cannot now assert a claim under a hostile work environment theory to save some of his time-barred claims. Blanton v. Bunch & Assocs., Inc., No. 8:04-cv-1051-T-27MAP, 2006 WL 269981, at *8 (M.D. Fla. Feb. 3, 2006) ("Plaintiff did not plead a hostile work environment claim in her complaint and may not raise this claim for the first time in response to Defendant's motion for summary judgment."); see Iraoloa & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1286 (11th Cir. 2003) (holding that plaintiff's claims not raised in complaint cannot

be raised for the first time in her response to defendant's motion for summary judgment).

Contrary to Plaintiff's contentions, the doctrine of equitable estoppel should not apply to toll the time limitations period in this case. Equitable estoppel is an extraordinary remedy "to be applied sparingly." Morgan, 536 U.S. at 113. See Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants."). Federal courts have typically invoked the doctrine "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or [has been] tricked by his adversary's misconduct into allowing the filing deadline to pass." Nat'l Cement Co. v. Fed. Mine Safety & Health Review Comm'n., 27 F.3d 526, 530 (11th Cir. 1994). Here, the Court finds no reason to toll Plaintiff's claims under this doctrine because Plaintiff has not filed a defective pleading, nor has he been tricked into allowing the deadline to pass. Therefore, Plaintiff's claims based on unlawful employment practices occurring in 2004 and his claim of being forced to blow off the press in 2005 are time-barred. Having addressed this matter, the Court must now determine whether Plaintiff can show a prima facie case of race discrimination and retaliation.

**B.    Race Discrimination Claim**

Plaintiff fails to create a genuine issue of material fact with respect to his race discrimination claim. In an action like the one at bar alleging disparate treatment, a plaintiff must prove an intentional discriminatory motive by presenting either direct or circumstantial evidence of racial animus. See, e.g., Selby v. Tyco Healthcare Group, L.P., 301 F. App'x 908, 911 (11th Cir. 2008). Absent direct evidence, as is the case here, Plaintiff must establish intentional discrimination under the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)

10

and <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248 (1981).  Under this framework, a plaintiff in a Title VII case alleging discriminatory treatment and relying on circumstantial evidence bears the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence.

To establish a prima facie case of race discrimination, Plaintiff must show that he was (1) a member of a protected class; (2) qualified to do the job; (3) subjected to an adverse employment action; and (4) treated less favorably than a similarly situated individual outside of his protected class or was replaced by a person outside of his protected class.  <u>Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ.</u>, 342 F.3d 1281, 1289 (11th Cir. 2003) (citations omitted); <u>see</u> <u>also</u> <u>Morris v. Emory Clinic, Inc.</u>, 402 F.3d 1076, 1082 (11th Cir. 2005) (holding that a "plaintiff does not shift the burden to the defendant" by merely "stating that he was fired or treated unfavorably"). Considering the facts in light most favorable to the nonmovant, the Court finds that Plaintiff has presented evidence to support two of the four requirements: he is a member of a protected class, African American, and he was qualified to do the job.  Thus, the elements at issue are whether Plaintiff was subjected to an adverse employment action and whether he was treated less favorably than a similarly situated individual outside of his protected class or was replaced by a person outside of his protected class.

Plaintiff contends he was subjected to several unlawful employment actions; however, the Court finds that only Plaintiff's demotion and termination are sufficiently adverse employment actions.  An adverse employment action must be a serious and material change in the terms, conditions, or privileges of employment in a "real and demonstrable way."  <u>Davis v. Town of Lake Park</u>, 245 F.3d 1232, 1239 (11th Cir. 2001).  As such, Plaintiff must either provide evidence of an

"ultimate employment decision," (i.e. termination, failure to hire, or demotion), or, for conduct falling short of an ultimate employment decision, show that the employer's conduct, in some substantial way, altered his "compensation, terms, conditions, or privileges of employment," deprived him of employment opportunities, or adversely affected his status as an employee. Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008) (quotations omitted).

In this case, Plaintiff identifies the following adverse employment actions: (1) Plaintiff was not allowed to supervise his shifts; (2) Plaintiff was verbally criticized for events he does not recall occurring; (3) Plaintiff was forced to resign and be demoted, and Defendant did not create a new position for Plaintiff in the alternative of being demoted; (4) Plaintiff was forced to clean the press; (5) Plaintiff was given a verbal warning for a blender overrun mistake; and (6) Plaintiff was terminated. As discussed earlier, most of these claims are time-barred. Moreover, all but two of them are insufficiently adverse. Demotion and termination are adverse employment actions. The other alleged actions are not. Two of the alleged actions involve verbal reprimands with no accompanying tangible harm. The other two deal with Plaintiff's complaints about his job duties, again with no accompanying tangible harm.

Mere verbal warnings, without any serious and material change in the terms, conditions, or privileges of employment, do not constitute adverse employment actions under Title VII. See Davis, 245 F.3d at 1241 ("[C]riticisms of an employee's job performance-written or oral-that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit."). Plaintiff contends that he was orally reprimanded in 2004 for events he does not recall occurring and that this oral reprimand was recorded in a memorandum to his personnel file. He contends that he was orally reprimanded again in 2005 for a blender overrun mistake. Plaintiff has not presented any

evidence to show that either of these reprimands resulted in a loss of pay or benefits or any other tangible consequence.  In the absence of such evidence, Plaintiff cannot create a genuine issue of material fact.

Plaintiff's claims about certain work duties that he was or was not assigned also fail to rise to the level of an adverse employment action.  Plaintiff contends that he was not allowed to supervise his shifts when he was employed as a PCT in 2004 and that he was asked in 2005 to clean off the press in a manner he felt was unsafe.  An "employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." Davis, 245 F.3d at 1239-40.  Thus, not all conduct by an employer that negatively affects an employee constitutes an adverse employment action. See Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998). Although Plaintiff contends that he was not given supervisory authority as a PCT, there is no evidence that he experienced any tangible harm, such as decreased salary. See Hooks v. Bank of Am., 183 F. App'x 833, 836 (11th Cir. 2006) (holding that employer actions "that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit").  Similarly, cleaning the press was a routine job performed by all employees.[2] (Def.'s Stmt. Mat. Facts ¶ 49). After Plaintiff complained that the task was unsafe, his supervisor allowed him to stop doing it. Even if these claims were not time-barred, they would be subject to summary judgment.

---

[2]Plaintiff attempts to create a genuine issue of material fact by stating in his Declaration that although cleaning the press was routine, he was forced to stand on top of the press to clean, which was both not routine and dangerous. (Pl. Decl. ¶ 18).  The Court, however, finds that his Declaration is inherently inconsistent with his deposition testimony.  During his deposition, Plaintiff never mentioned that he was forced to stand on top of the press; rather, he unequivocally states that he had to stand on handrails or the elevator and use an airwand to blow off the top of the press. (Pl. Dep. 147-49, 152-53).  Thus, the Court will disregard this part of Plaintiff's Declaration. See Tippens v. Celotex Corp., 805 F.2d 949, 954 (11th Cir. 1986) (holding that if an affidavit and previous testimony are so inherently inconsistent, the court must disregard the affidavit as a matter of law).

Although Plaintiff's demotion and termination are clearly adverse employment actions that represent a serious and material change in the terms of his employment, Defendant is entitled to summary judgment because Plaintiff has failed to present evidence to support a prima facie case of discrimination.  Once a plaintiff has shown that he was subjected to an adverse employment action, he must then show that a similarly situated employee outside the protected class was treated more favorably for the same or similar conduct.  In order to satisfy this prong, the comparator employee must be similarly situated to the plaintiff "in all relevant aspects." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

In this case, Plaintiff fails to show a suitable comparator for his demotion and termination claims.  Plaintiff first seeks to show a suitable comparator for when Defendant did not create a new position for Plaintiff in lieu of his demotion and for his demotion.  When the adverse employment action is one of discipline, the Court must consider "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Holifield, 115 F.3d at 1562.

Plaintiff's only alleged comparator is Matt Whitman, a white male.  Plaintiff contends that because Whitman could not perform his job, Defendant created a new position for him in lieu of demoting him.  Plaintiff fails to show that Whitman is similarly situated for two reasons.  First, Plaintiff presents limited evidence to show that he and Whitman are similarly situated because Plaintiff does not know the name of Whitman's new position or the circumstances under which the job was created other than "he couldn't perform his job" based on "the talk of the plant." (Pl. Dep. 145).  Whatever Plaintiff knows about Whitman's situation is hearsay. See Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir.1999) (holding that hearsay cannot be considered on a motion for

14

summary judgment).  Second, according to Plaintiff a new position was created for Whitman because he could not perform his job, whereas Plaintiff was demoted because of an alleged harassment claim.  Poor job performance is not the same or even similar to alleged harassment because both are different acts warranting different treatment. See Wood v. K-Mart Corp., 273 F. App'x 806, 807 (11th Cir. 2008) (holding that "the quantity and quality of the comparator's conduct must be nearly identical" to that of the plaintiff (internal quotation marks and bracket omitted)). Thus, Plaintiff fails to show a suitable, similarly situated comparator.

In the absence of a similarly situated comparator, Plaintiff could also satisfy this last element by showing that he was replaced by someone outside his protected class.  Maynard, 342 F.3d at 1289.  However, Plaintiff cannot satisfy this element either; to the contrary, Kemuel Taylor, a black male, replaced Plaintiff as PCT.

Similarly, Plaintiff fails to show a suitable comparator for his termination claim.  Plaintiff contends that Gary McGahee, a white male, contacted corporate outside the chain of command, complained, and was not terminated.  "[T]he comparator's misconduct must be nearly identical to the plaintiff's in order to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001) (internal quotation marks omitted).  Although Plaintiff claims that he was similarly situated to McGahee, a couple of key differences are readily apparent between the two.  First, Plaintiff was accused of violating the chain of command twice, whereas McGahee had apparently violated the chain of command one time.  Second, Plaintiff's decision makers, Avrett and Smith, state in their

15

Affidavits that neither were aware of McGahee contacting corporate outside the chain of command.[3]

"Employees are not 'similarly situated' if management is aware of one's improper conduct, but not

aware of the others' conduct." <u>Amos v. Tyson Foods, Inc.</u>, 153 F. App'x 637, 647 (11th Cir. 2005);

<u>see</u> <u>Bogle v. Orange County Bd. of County Comm'rs</u>, 162 F.3d 653, 659 (11th Cir. 1998) (holding

that an employee who may have broken a rule but was not caught was not similarly situated to one

who had been caught).  Plaintiff does not rebut Defendant's lack of knowledge with any evidence

other than his own allegations.  Moreover, Plaintiff does not know any specific detail surrounding

McGahee's contact with Corporate other than "he called because some business somebody didn't

take care of or wanted him to do or something . . . but it was something about he called Corporate

Office, and Gary still works there." (Pl. Dep. 223).  Therefore, Plaintiff fails to show a suitable,

similarly situated comparator.

Because Plaintiff fails to establish a prima facie case of race discrimination, the Court will

not continue its analysis into Defendant's legitimate, nondiscriminatory reasons for its decisions and

pretext.  For the foregoing reasons, Defendant's Motion for Summary Judgment on Plaintiff's race

discrimination claim is **GRANTED**.

### C.    Retaliation Claim

Plaintiff has also fails to establish a genuine issue of material fact with respect to his

retaliation claim.  Plaintiff contends that he was terminated in retaliation for complaining about

discrimination to Corporate HR Manager Kinnear in 2004 and to Regional Manager Black in 2005.

---

[3]Although Plaintiff attempts to create a genuine issue of material fact that Avrett and Smith were aware of McGahee's misconduct, he offers nothing more than his own speculation, if that, to oppose the affidavits of Avrett and Smith.  Speculation is not enough to raise a genuine issue of material fact. <u>Gerard v. Bd. of Regents of State of Ga.</u>, 324 F. App'x 818, 826 (11th Cir. 2009).

Plaintiff also states that he was retaliated against in 2004 when he first complained of discrimination to Plant Manager Smith and was later verbally criticized for an event Plaintiff does not recall occurring.  The Court will not address this claim because it is time-barred.  Because Plaintiff has presented only circumstantial evidence of retaliation and no direct evidence, proof of retaliation is controlled by the familiar <u>McDonnell Douglas</u> framework discussed <u>supra</u>.

The anti-retaliation provisions of Title VII prohibit an employer from retaliating against an employee "because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); <u>see</u> <u>Merritt v. Dillard Paper Co.</u>, 120 F.3d 1181, 1185-86 (11th Cir. 1997).  To establish a prima facie case of retaliation, Plaintiff must show: (1) that he engaged in statutorily protected expression; (2) that he suffered adverse employment action; and (3) that there is some causal relationship between the two events.  <u>Holifield</u>, 115 F.3d at 1566.  Unquestionably, Plaintiff suffered an adverse employment action when he was terminated.  Thus, the issues raised by the present motion are whether Plaintiff engaged in statutorily protected activity, and if so, whether there is a causal link between his actions and his termination.  The Court finds that Plaintiff fails to establish these elements.

Plaintiff's first claim of retaliation arising from his complaint of discrimination to Kinnear in 2004 fails because Plaintiff cannot show a causal connection between his complaint and his termination.  Assuming his complaint is statutorily protected, Plaintiff may show this causal link "by presenting evidence that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." <u>Nichols v. CSG Sys., Inc.</u>, 245 F. App'x 937, 941 (11th Cir. 2007) (internal quotation marks omitted).  Even if Plaintiff can

show that his decision makers were aware of his complaint, he cannot show that the two events are causally related.  The temporal proximity must be "very close." <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001).  In this case, the eleven-month difference between the time Plaintiff complained of discrimination to the time he was terminated is insufficient to satisfy the causal connection element of his retaliation claim.  Generally, a gap of more than three months between the protected activity and adverse employment action is not sufficient to satisfy the close proximity standard. <u>See</u> <u>Summers v. Winter</u>, 303 F. App'x 716, 720 (11th Cir. 2008) (holding that "a time gap of three months or more does not establish a causal connection").

Plaintiff's second claim of retaliation arising from his call to Black also fails because Plaintiff cannot show that he engaged in statutorily protected activity.  For an informal complaint to constitute protected expression, there must be some mention of discrimination. <u>Wehunt v. R.W. Page Corp.</u>, 352 F. Supp. 2d 1342, 1358 (M.D. Ga. 2004).  An employee cannot complain to his employer about unfair treatment in a racially-neutral way and expect the employer to divine that his complaint is really of race discrimination. <u>See</u> <u>id.</u> ("At a minimum, an employee must communicate to his employer his belief that discrimination was occurring.").  In this case, Plaintiff never spoke with Black, and the voicemail left by Plaintiff did not mention discrimination or even describe the reason for his call.  As such, Plaintiff cannot show that his termination was in retaliation for calling Black.  Because Plaintiff fails to establish a prima facie case of retaliation, the Court will not continue its analysis into Defendant's legitimate, nondiscriminatory reasons for its decisions and pretext.  Therefore, the Court **GRANTS** Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. 29] is hereby

**GRANTED** as to all claims.

      **SO ORDERED** this 21st day of January, 2010.

                      S/ C. Ashley Royal
                      C. ASHLEY ROYAL
                      United States District Judge

APG/chw